2021 IL App (1st) 191631-U

No. 1-19-1631

Order filed June 30, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 9195 |
| | ) | |
| GLENN SMITH, | ) | Honorable |
| | ) | Maria Kuriakos Ciesil, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for possession of a controlled substance with intent to deliver is affirmed over his contention that the State failed to prove that he constructively possessed the controlled substance at issue.

¶ 2    Following a bench trial, defendant Glenn Smith was found guilty of possession with intent to deliver 1 gram or more but less than 15 grams of a controlled substance (cocaine) (720 ILCS 570/401(c)(2) (West 2018)) and sentenced to eight years in prison. On appeal, defendant argues

the State failed to prove him guilty beyond a reasonable doubt of possessing the recovered cocaine. For the following reasons, we affirm.

¶ 3 Defendant was charged by information with one count of possession of a controlled substance with intent to deliver in that, on or about May 23, 2018, he unlawfully and knowingly possessed with intent to deliver 1 gram or more but less than 15 grams of a substance containing cocaine, or an analog thereof (720 ILCS 570/401(c)(2) (West 2018)).[1]

¶ 4 Chicago police officer Albert Rangel testified that on May 23, 2018, he executed a search warrant targeting defendant and an apartment located on the 5100 block of South Prairie Avenue in Chicago. When Rangel arrived with about 10 other officers, he observed defendant outside the apartment building washing a motor vehicle. The officers detained defendant and two individuals that were with him. At some point, suspect crack cocaine was recovered from one individual's left pant leg, and defendant and the individuals were brought into the apartment by the officers.

¶ 5 The apartment was occupied by one adult woman and two children. The officers performed a protective sweep, and the woman gave consent for the officers to search the vehicle outside. Nothing significant was recovered from the vehicle, and the woman and the children were allowed to leave. The officers conducted a systematic search of the apartment during which they recovered a digital scale from a windowsill in the living room, and a vacuum seal machine and black bag containing several clear Ziploc baggies from a sink countertop. In a bedroom, officers recovered clear and empty sandwich baggies and a shoe that matched the size of the shoes defendant wore

---

[1] Kelly Mitchem was also charged in this information with one count of possession of a controlled substance with intent to deliver, but he is not party to this appeal.

during the execution of the warrant. Rangel described the recovered baggies as ones "used in narcotics packaging."

¶ 6 Rangel testified that as he neared the refrigerator, defendant became "more physically uncomfortable." Rangel explained that defendant "was trying to distract us by requesting items such as a bottle of water *** which he knew *** was located in the back of the residence." Defendant also complained he did not feel well and "threw himself on the ground claiming to be sick or passing out." Officers retrieved a bottle of water from the area where defendant directed them to and requested an ambulance for him. In the refrigerator, Rangel recovered a clear, knotted bag holding two clear, knotted bags each containing suspect crack cocaine from inside a loaf of bread. Defendant was then placed into custody, and a custodial search revealed he had $1170 on his person.

¶ 7 According to Rangel, after being placed into custody, defendant stated that he "wanted to take ownership of what was found on one of the subjects outside of the residence." Rangel pulled defendant aside and asked if he had something he wanted to say. Defendant responded that whatever was found on his nephew was his, and that his nephew "had nothing to do with this." Rangel asked defendant if he knew what was found on his nephew, and defendant said, "just the drugs."

¶ 8 On cross-examination, Rangel confirmed that when the officers arrived at the scene, defendant was outside the residence, and he never observed defendant go inside the residence except for when the officers escorted him there. Rangel also did not observe defendant have contact with items in the refrigerator or with the individual from whom the officers recovered narcotics. During the search, the officers found various forms of mail but did not find anything with

defendant's name on it. The officers also did not find any photographs of defendant in the residence. Defendant never "physically said or verbally indicated" that he was uncomfortable with Rangel searching the refrigerator. The shoes Rangel found in the residence did not have defendant's name on them, nor did Rangel ever observe defendant wearing them. Rangel conceded he did not "positively" know if they belonged to defendant.

¶ 9    Chicago police officer Kyle Bernaciak testified that he was on the team executing the search warrant. When he arrived at the target address, Bernaciak observed defendant outside with two other individuals. Bernaciak stopped one of the individuals who defendant claimed was his nephew and performed a protective pat-down, during which he noticed an object consistent with narcotics packaging in the individual's pant leg. The recovered item was one clear baggy with 19 white, rock-like substances, which Bernaciak recognized as suspect crack cocaine, as well as another clear baggy with 8 rock-like substances that he recognized as suspect crack cocaine. The individual was placed into custody. On cross-examination, Bernaciak testified that he did not observe defendant transfer a bag of narcotics to the individual.

¶ 10    The State entered into evidence body-worn camera footage from various officers on the scene. The footage, which is included in the record on appeal, was placed into evidence and published to the trial court. On our review, the footage shows, *inter alia*, defendant and two individuals outside near a vehicle when officers arrive, and a woman and two children inside a residence when officers enter. Officers later bring defendant and the two individuals from outside into the residence, and defendant states that the children inside the residence are his, tells officers how they could have opened a door instead of breaking it down, asks officers for water located "in

the back," falls to the floor as officers search the apartment, and claims ownership of the drugs found on his nephew.

¶ 11    The State entered a stipulation with defendant that a forensic chemist would testify that the contents of the items recovered from the refrigerator weighed four grams and were positive for the presence of cocaine. The State also entered several exhibits, which Rangel identified as photographs of the recovered digital scale and vacuum sealer; the loaf of bread inside a clear plastic bag; the two clear, knotted bags containing cocaine that were inside the loaf of bread; the shoe found in the bedroom; and a shoe defendant was wearing on the date of the search.[2]

¶ 12    The trial court found defendant guilty, noting that defendant was named in the search warrant and standing outside of the target apartment when officers arrived; officers recovered a digital scale, vacuum seal machine, clear plastic bags, and a shoe matching defendant's shoe size in the apartment; defendant indicated his familiarity to the apartment by stating the officers could have opened the door instead of breaking it down and by "sitting comfortably at one point"; defendant told officers his nephew had nothing to do with the drugs recovered outside of the apartment; and Rangel testified that when he was near the refrigerator, defendant claimed to feel ill, and the officers then found cocaine in the refrigerator.

¶ 13    Defendant filed a motion and supplemental motion for new trial arguing, *inter alia*, that the State failed to prove he constructively possessed the recovered contraband, which the trial court

---

[2] These exhibits are not included in the record on appeal. It is a defendant's burden as the appellant to provide a sufficiently complete record on appeal so that this court can be fully informed about the issues, and any doubts arising from an incomplete record are resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984); *People v. Hinton*, 249 Ill. App. 3d 713, 718 (1993).

denied. Following a sentencing hearing, the trial court sentenced defendant to eight years in prison. Defendant's motion to reconsider sentence was denied.

¶ 14    On appeal, defendant argues the State failed to prove him guilty beyond a reasonable doubt of possession with intent to deliver a controlled substance. Specifically, he argues the State did not establish he constructively possessed the cocaine found in the refrigerator because he did not reside in or have any control over the apartment, nor did the State prove he had knowledge of the cocaine's presence.

¶ 15    When a defendant claims that the evidence at trial was insufficient to sustain his conviction, the question on review is "whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. The trier of fact has the responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Therefore, a reviewing court cannot substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or credibility of witnesses. *Brown*, 2013 IL 114196, ¶ 48. A criminal conviction will only be reversed where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Belknap*, 2014 IL 117094, ¶ 67.

¶ 16    Defendant was convicted of possession with intent to deliver 1 gram or more but less than 15 grams of a controlled substance, specifically, cocaine. A person commits this offense when he knowingly possesses with intent to deliver 1 gram or more but less than 15 grams of any substance

containing cocaine or an analog thereof. 720 ILCS 570/401(c)(2) (West 2018). Defendant's sole challenge on appeal is that the State failed to establish his knowing possession of the cocaine at issue.

¶ 17    Knowing possession can be either actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). "Actual possession is proved by testimony which shows [the] defendant exercised some form of dominion over the unlawful substance, such as trying to conceal it or throwing it away." *People v. Scott*, 152 Ill. App. 3d 868, 871 (1987). Where, as here, there is no evidence of actual possession, the State must prove a defendant's constructive possession. See *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. To establish constructive possession, the State must prove the defendant had (1) knowledge of the presence of the contraband, and (2) immediate and exclusive control over the area where the contraband was found. *People v. Hunter*, 2013 IL 114100, ¶ 19.

¶ 18    "Knowledge may be proven by evidence of a defendant's acts, declarations or conduct from which it can be inferred he knew the contraband existed in the place where it was found." *People v. Ross*, 407 Ill. App. 3d 931, 936 (2011). "Control is established when a person has the 'intent and capability to maintain control and dominion' over an item, even if he lacks personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 (quoting *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992)). Control over the area where the contraband was found gives rise to an inference that the defendant possessed the contraband (see *Spencer*, 2012 IL App (1st) 102094, ¶ 17), but a defendant's lack of control over the premises does not preclude a finding of guilty if the circumstantial evidence supports an inference that he intended to control the contraband inside (*Tates*, 2016 IL App (1st) 140619, ¶ 20).

¶ 19   A trier of fact is entitled to rely on reasonable inferences of knowledge and possession, absent other factors that might raise a reasonable doubt of a defendant's guilt. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession is often established entirely by circumstantial evidence. *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18.

¶ 20   Viewing this evidence in a light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that defendant constructively possessed the cocaine in the refrigerator. Officer Rangel testified that when he neared the refrigerator containing cocaine, defendant appeared uncomfortable, fell on the floor, and asked for water. From defendant's behavior, the trial court could infer that defendant knew the officers were approaching cocaine and attempted to distract them from finding it by feigning illness and requesting an item from a different area of the residence. See *People v. Jones*, 2014 IL App (3d) 121016, ¶ 26 ("A trier of fact is, indeed, entitled to draw a commonsense inference that a defendant's suspicious behavior resulted from his knowledge that he was committing a crime."); *People v. Stamps*, 108 Ill. App. 3d 280, 295 (1982) ("suspicious behavior in the vicinity of narcotics, while not sufficient to show constructive possession, is sufficient to show guilty knowledge").

¶ 21   Defendant's immediate and exclusive control of the contraband could also be inferred from the evidence. Defendant was outside of the apartment washing a vehicle when officers arrived. He told the officers they could have opened a door instead of breaking it down, which could be interpreted as him caring about the apartment's condition. Defendant stated that the children in the apartment were his and knew where the apartment's bottled water was kept. All of these pieces of evidence demonstrate defendant's familiarity to the residence. Additionally, a shoe in the apartment matched the size of defendant's shoes on the date of the search, so the court could

reasonably infer the recovered shoes belonged to him, and that he kept personal items in the apartment. Moreover, defendant told the officers that his nephew had nothing to do with "this," indicating defendant's ownership of the drugs found on his nephew just outside the residence. In sum, this evidence was sufficient for the trier of fact to find defendant constructively possessed the cocaine found in the apartment's refrigerator.

¶ 22    Nevertheless, defendant argues that the State failed to establish his knowledge of the presence of the cocaine in the refrigerator where the body-worn camera footage shows he appeared actually ill at the time of the search and he was never close to the cocaine except for when officers escorted him into the kitchen. He further asserts the State failed to establish his control over the cocaine where there was no evidence he lived at the apartment, that any of the items found within the apartment belonged to him, and no mail addressed to him or photographs of him were in the apartment. See *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 29 (noting that habitation of the location where contraband is found can constitute sufficient evidence of control to establish constructive possession, and that mail addressed to a defendant at that location can support an inference of his control over that location). Defendant adds that the recovered shoe matching his shoe size was insufficient evidence to establish his control of the residence.

¶ 23    We reiterate that constructive possession is often proved entirely through circumstantial evidence (*Terrell*, 2017 IL App (1st) 142726, ¶ 18), and the trier of fact is entitled to rely on reasonable inferences of knowledge and possession (*Spencer*, 2012 IL App (1st) 102094, ¶ 17). Based on the evidence that defendant was outside of the residence washing a vehicle when officers arrived, made statements demonstrating his relationship to the residence, a shoe matching his shoe size was in the residence, expressed discomfort when an officer neared the area where contraband

was found, and said his nephew was not responsible for drugs found on his person just outside of the apartment, we cannot say the trial court's inference that defendant constructively possessed the cocaine within the apartment was unreasonable. Stated differently, the evidence presented was not unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of defendant's guilt. See *Belknap*, 2014 IL 117094, ¶ 67.

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 25    Affirmed.